HARRY E. and EDITH EISENROD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eisenrod v. Commissioner
Docket Nos. 4604-73, 8981-73.
United States Tax Court
T.C. Memo 1976-320; 1976 Tax Ct. Memo LEXIS 81; 35 T.C.M. (CCH) 1448; T.C.M. (RIA) 760320; October 19, 1976, Filed *81 Petitioner Harry E. Eisenrod made payments during the years in question toward the satisfaction of a judgment rendered against him in 1952. The judgment was rendered in a lawsuit instigated by the trustee in bankruptcy of a bankrupt corporation controlled by petitioner and his brother. The judgment represented funds of the bankrupt corporation conveyed by petitioner and his brother to other corporations controlled by them in defraud of creditors. Held, petitioner has failed to establish that he was in the trade or business of promoting corporations. Held,further, even if petitioner was in such trade or business, he has failed to demonstrate that these conveyances were directly connected with that trade or business. Irving Graff, for the petitioners. Hector C. Perez, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1967 through 1971 as follows: Year
Deficiency
1967
$10,777.58
1968
2,255.01
1969
2,275.24
1970
1,952.09
1971
2,061.28
The sole issue raised in this litigation concerns the deductibility of payments made by petitioner Harry E. Eisenrod during the years *82 in question to satisfy a judgment obtained against him in a previous lawsuit. FINDINGS OF FACT Many of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Harry E. Eisenrod and Edith Eisenrod, husband and wife, resided in Hawthorne, Calif., at the time of filing the petitions in the present case. Their joint income tax returns for the years 1967 through 1971 were filed with the Internal Revenue Service Center in Ogden, Utah. The designation "petitioner" will hereafter refer only to Harry E. Eisenrod. In 1941 petitioner was employed in New York City in a business engaged in the retail sale of ladies' apparel. At the request of his employer, petitioner moved to Los Angeles, Calif., and continued to work in the retail apparel business. Petitioner's brother, Solomon Eisenrod (hereafter sometimes referred to as Solomon), was engaged in business ventures in the eastern part of the United States. In 1945 Solomon wished to expand his business into California and requested petitioner to join him in his ventures. In 1945 Solomon gave petitioner 100 shares of stock *83 (representing a 25 percent ownership interest) in the Lincoln Machine Co. (hereafter referred to as Lincoln Co.), a Rhode Island corporation. Solomon and petitioner then owned all of the outstanding stock of Lincoln Co. Shortly thereafter, petitioner ceased his employment in the ladies' apparel business. Also in 1945 petitioner and Solomon were elected directors of Poulsen & Nardon, Inc. (hereafter referred to as P&N Co.), a California corporation. Following this election, Lincoln Co. purchased all the outstanding stock of P&N Co. from the latter's existing shareholders. Petitioner then became a salaried officer of the corporation. P&N Co. was engaged in manufacturing junction boxes for aircraft companies and was operating under a Government contract at the time it was acquired by Lincoln Co. Petitioner and his brother intended to continue the operations of P&N Co. as long as the war effort required, but then sell the company as soon as the war effort was over. Petitioner succeeded in getting several of his friends to loan money to P&N Co. on his personal guarantee. Numerous attempts were made by petitioner and his brother to sell P&N Co. However, the corporation went bankrupt *84 in 1949 (some three years after it was acquired by Lincoln Co.) and no purchaser was ever found. The only income petitioner ever received from his involvement with P&N Co. was his salary as an officer. Before P&N Co. became bankrupt petitioner and his brother formed Assets Realization Corporation, a corporation which bought and sold aluminum raw materials. Sometime after the bankruptcy of P&N Co. petitioner and his brother formed Monarch Television Electronics. There is no indication what business, if any, this latter company was engaged in.
During the course of the bankruptcy proceedings of P&N Co., the trustee in bankruptcy, Ernest R. Utley, brought a civil action on behalf of the creditors of P&N Co. against petitioner, Solomon and Lincoln Co. to recover funds fraudulently transferred by petitioner and his brother from P&N Co. to other corporations which they controlled. In May 1952 a judgment was entered in favor of the trustee and against petitioner and his brother (jointly and severally) for $687,272.93.[1] In its judgment the court noted: * * * that conveyances of funds represented by said verdict [for $687,272.93] had been made by the defendants Solomon Eisenrod and Harry *85 E. Eisenrod, as officers and directors of Poulsen & Nardon, Inc. to various corporations controlled, dominated and operated by them and pursuant to a conspiracy on the part of said defendants * * * to hinder, delay or defraud the creditors of Poulsen & Nardon, Inc., * * * This judgment was affirmed on appeal, , and will hereafter be referred to as the Utley judgment.[2] There is no indication that any of the funds conveyed were ever taken into income by petitioner, nor that they should have been. In the course of the bankruptcy proceedings of P&N Co. substantial claims for taxes were made by the United States, [3] the New York Department *86 of Labor and the State of California. Pursuant to the direction of the referee in the bankruptcy proceeding, the trustee in bankruptcy assigned the Utley judgment to these three taxing bodies in October 1955, and apportioned the judgment among them as their interests appeared. Petitioner and Solomon then entered into negotiations with the Federal government (which was being represented by the Department of Justice) in order to settle the judgment against them. In March 1967 petitioner offered in writing to compromise and settle his liability under the Utley judgment for the total sum of $80,000, payable $45,000 in 1967 and $5,000 each year thereafter for seven years. The offer stated that in the event the offer was rejected the payments made thereunder were nonrefundable and were to be credited against petitioner's liability for the judgment. In accordance with his offer, petitioner paid the Federal government $45,000 in 1967, and $5,000 in each of the years 1968, 1969, 1970 and 1971. These amounts were deducted in full on petitioner's income tax returns *87 for the respective years. In his tax returns for 1967, 1968 and 1969, petitioner noted that acceptance of his offer was "expected shortly" or still "pending." By letter dated October 23, 1968, petitioner was notified that the Attorney General of the United States rejected his offer of settlement. However, all payments made in the years before us were retained by the Government and credited against petitioner's liability. Subsequently a dispute arose as to whether the offer of settlement made in March 1967 was ever accepted by the Federal government.A lawsuit was instigated by the United States, the New York Department of Labor, and the State of California (as plaintiffs) against petitioner and Solomon (as defendants) to resolve this dispute. In August 1973 summary judgment was entered in favor of the United States and the State of California[4] for $546,807.44 as principal and $968,796.03 as interest accrued on the original Utley judgment. The summary judgment was on appeal in the California courts at the time of trial of the present case. Respondent disallowed *88 all of the deductions taken with respect to the payments in question herein claiming they were not ordinary and necessary business expenses nor losses deductible under any provision of the Internal Revenue Code. OPINION Petitioner makes only one argument regarding the deductibility of the payments made in the years before us. He argues that he was in the trade or business of promoting business enterprises and that the payments in question are "proper deductions" [5] *89 attributable to that trade or business. Respondent argues that petitioner was not in the trade or business of promoting corporations and that the payments made by petitioner are not "ordinary and necessary" within the meaning of section 162(a). Further, respondent argues that no "losses" were sustained during the years before us because the dispute as to whether petitionr's compromise offer was accepted by the United States had not yet been resolved. The parties have framed the issues before us very narrowly, and we will confine our opinion only to those issues raised. To determine the deductibility of the payments made by petitioner we must look to the transactions out of which the liability for those payments arose. . The Utley judgment rendered against petitioner indicates that petitioner was liable thereon because of conveyances of funds of P&N Co. made by him and his brother to other corporations controlled *90 by them in defraud of the creditors of P&N Co. Petitioner's sole argument is that the payments on the judgment arose out of his trade or business of promoting business enterprises. We reject this argument as not supported by the evidence. The evidence indicates that petitioner and his brother together formed two corporations in addition to their existing holdings in Lincoln Co. However, this alone is insufficient to indicate that petitioner was in the business of promoting corporations. As the Supreme Court stated in : * * * To be sure, the presence of more than one corporation might lend support to a finding that the taxpayer was engaged in a regular course of promoting corporations for a fee or commission, * * * or for a profit on their sale, * * * but in such cases there is compensation other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise * * *. Petitioner does not claim he was in the business of promoting corporations for a fee or commission. Rather, he claims he held the corporations for sale at a profit. There is no evidence whatever *91 of petitioner's motives or activities with respect to any of the corporations owned or controlled by him other than P&N Co. And we think his attempts to sell P&N Co. do not alone establish that he was in the trade or business of promoting corporations for a profit. Consequently, petitioner has failed to carry his burden of proof to show he was in the trade or business of promoting corporations. Furthermore, even if petitioner were in the business of promoting corporations for a profit on their sale, he has not demonstrated that the payments in question arose out of that trade or business. Liability for the Utley judgment arose from fraudulent conveyances of funds of P&N Co. There is no evidence in the record showing why these conveyances were made or how the funds were used. Petitioner has simply failed to show that these transactions were directly connected with the business of promoting corporations or, indeed, with any business in which he was engaged. . Having concluded that petitioner was not in the trade or business of promoting corporations, and that the payments here were not shown to be directly *92 related to the conduct of a trade or business, we need not decide whether the payments in the years before us could be characterized as either "losses" or "expenses." Decisions will be entered for the respondent. Footnotes
1. See case number 12091-T in the District Court of the United States, Southern District of California, Central Division. ↩
2. While we have taken judicial notice of the decision of the Court of Appeals for the Ninth Circuit affirming the judgment against petitioner and his brother, we have not been asked, nor do we take judicial notice of the contents of the written opinion of that Court. Apart from the affirmance itself, nothing in the opinion of the Court of Appeals has influenced our decision in any manner.↩
3. The claim of the United States for $515,289.90 was allowed by the referee in bankruptcy only to the extent of $396,916.86.↩
4. There is no indication from the record whether summary judgment was ever granted in favor of the New York Department of Labor.↩
5. In the petition the claim is made that the payments in question are either ordinary and necessary business expenses or business losses. No contention has been made that the payments were incurred in connection with petitioner's trade or business of being a corporate employee (either as losses or expenses), see , and Frank W. Byrne, a Memorandum Opinion of this Court dated September 7, 1945, nor that the payments constitute losses incurred in a transaction entered into for profit under section 165(c)(2). Cf. . Also, no contention has been made that any portion of the payments in question is allocable to interest accrued on the original Utley judgment which would be deductible under section 163. . All statutory references herein are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩